# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 490 | **DATE** | 6/26/2001 |
| **CASE TITLE** | Kallman vs. Tandy Corp., etal. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER. The Court's memorandum opinion and order of 6/11/01, reported at 2001 WL 664448, is vacated and replaced with the attached corrected memorandum opinion and order. The Court grants plaintiff's motion for an award of attorney's fees and non-taxable expenses (138-1, 138-2). The Court awards plaintiff attorney's fees of $142,383.70 and expenses of $21,085.63, for a total of $163,469.33.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 2 7 2001 | |
| | Notified counsel by telephone. | | date docketed | 158 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | FILED FOR DOCKETING | | |
| | Copy to judge/magistrate judge. | 01 JUN 26 PM 5:54 | date mailed notice | |
| JD | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDITH ALTER KALLMAN, )
)
        Plaintiff, )
)
vs. ) Case No. 99 C 490
) **DOCKETED**
TANDY CORP. and )
RADIO SHACK CORP., ) JUN 2 7 2001
)
        Defendants. )

## CORRECTED MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In 1998, Judith Kallman filed suit in state court in Indianapolis, Indiana against Tandy Corp. (now known as Radio Shack Corp.), seeking to enforce a guaranty of a lease of property in the Chicago suburbs. In April 1998, Tandy removed the case to federal court based on diversity of citizenship, and in January 1999, on a motion filed by Tandy in November 1998, the federal court in Indianapolis transferred the case to this district. In March 2000, this Court granted summary judgment on liability in Kallman's favor but denied summary judgment on damages. A five and one-half day bench trial was held, and on January 16, 2001, the Court entered judgment in Kallman's favor for $178,682.68.

A provision of the lease stated that

> [i]f, on account of any breach by the parties hereto of their obligations hereunder, it shall become necessary for either party to employ an attorney to enforce or defend any of its rights or remedies hereunder, and should such party prevail, it shall be entitled to any reasonable attorney's fees incurred in such connection.

Lease §18:06. Pursuant to this provision, Kallman has petitioned the Court to award her

attorney's fees of $157,748.45, and nontaxable expenses of $21,085.63. Defendants concede that they are liable for Kallman's reasonable attorney's fees but dispute the amount requested by Kallman.

**Discussion**

In two recent cases, the Seventh Circuit has limited the scope of a court's inquiry regarding the award of attorney's fees pursuant to a private contract. In *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150 (7th Cir.1996), the parties' agreement required one party to hold the other harmless against any attorney's fees and expenses incurred as a direct result of the first party's breach. The court read a "reasonableness" limitation into the agreement but stated that the best evidence of market value (and thus reasonableness) is what people pay for it, and that "the best guarantee of reasonableness" is whether the party seeking to recover its attorney's fees has actually paid them to its lawyer. *Id.* at 153. In *Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, 200 F.3d 518 (7th Cir.1999), the court expanded on *Balcor*, reiterating that "[i]f the bills were paid [by the party seeking to recover fees], this strongly implies that they meet market standards." *Id.* at 520. It noted that the reason for reading a reasonableness requirement into such agreements is "to guard against moral hazard--the tendency to take additional risks (or run up extra costs) if someone else pays the tab." *Id.* at 521. But the proper way to assess fee requests in this context is "to ensure that they were reasonable in relation to the stakes of the case and [the opposing party's] litigation strategy...." *Id.* In other words, were the requested amounts "fees that commercial parties would have incurred and paid knowing that they had to cover the outlay themselves?" *Id.*

In this case, the short answer to this question is yes. Kallman sought damages of some

2

$303,000 plus prejudgment interest; though she ended up recovering somewhat less, her damage request was neither inflated nor frivolous. Defendants fiercely battled against Kallman for every inch of territory. Having done so (and, we might add, having spent far more attorney time on the case than Kallman[1]), they can hardly complain about the time Kallman's attorney's spent returning fire. The Court finds that the attorney's fees and expenses sought by Kallman are in fact reasonable in relation to what was at stake in the case and the strategy pursued by defendants, and that they are fees that commercial parties would have incurred and paid even without a fee-shifting contract.

We deal next with the specific objections raised by defendants.

Defendants object to attorney time and expenses incurred by reason of the fact that Kallman elected to have her Indianapolis attorneys handle the case – including depositions in the Chicago area and the trial – rather than having a Chicago attorney do the work. To be sure, using an Indianapolis attorney resulted in increased travel time as well as hotel and meal expenses at the time of trial, perhaps as much as $10,000 worth of additional fees and expenses altogether, though the exact amount is not entirely clear. But the use of Indianapolis attorneys actually lowered the overall expense involved, as they charged less per hour than would have been charged by attorneys of similar experience in Chicago: lead counsel Sidney Mishkin's hourly rate was $215, and second-chair counsel Lesa Fall Duvall's hourly rate was $180 at the outset of the case and $200 at the end. Rates for equivalent Chicago-based attorneys would have been a

---

[1] The record reflects that defendants' Chicago counsel spent 918.30 hours on the case from February 4, 1999 through August 23, 2000, whereas Kallman's counsel spent 779 hours during the same period, and a total of 783.5 hours from the case's inception on January 27, 1998 through the entry of judgment.

3

good deal higher – enough to more than counterbalance any added travel-related costs. Under the circumstances, the Court will not deduct the "extra" time and expense associated with travel by counsel.

Defendants contend that no fees should be recovered for the period when the case was in Indianapolis, because it was frivolous to file it there to begin with. The Court disagrees. First of all, virtually all of the attorney time in question would have been expended no matter where the case was filed: it concerned pre-filing investigation, preparation of the complaint, and responding to discovery requests. But in addition, the Court is not persuaded that Kallman lacked a basis to file the case in Indianapolis. The fact that she elected not to oppose transferring it to this District appears to reflect a decision not to spent resources fighting a procedural skirmish rather than a concession that the case never should have been filed in Indianapolis.

According to defendants, the time spent on Kallman's summary judgment motion should be reduced to reflect the fact that she did not get summary judgment on damages, which defendants say Kallman's counsel ought to have known would be the outcome. It is not clear that *Balcor* and *Medcom* permit reductions on this basis, but even if they did the Court would not make them. Kallman's summary judgment request on damages, though ultimately unsuccessful, was not frivolous or even unreasonable; rather it was a legitimate effort to attempt to bring the case to a close without the additional significant expense of trial, or at least to narrow it somewhat. A reduction of the attorney time claimed by Kallman would not be appropriate.

Defendants argue that Kallman should not recover for 78 hours of attorney time spent preparing for trial because the time entries in the attorneys' records are insufficient to describe exactly what was done. A reduction on this basis in a contractual (as opposed to a statutory) fee-

4

shifting case is expressly precluded by *Medcom.* 200 F.3d at 520. But even if it were appropriate, the Court would not make the reduction. Based on the Court's own experience as a practicing attorney, and in reviewing fee requests as a judge, it is common in the marketplace for attorneys who are preparing for trial to make omnibus entries of this type – for trial preparation can involve so many disparate tasks that it is not practical or efficient to list all of them. Under the circumstances, the entries in question are not unreasonably opaque.

The Court also disagrees with defendants that it was unreasonable and/or duplicative for Kallman to have two attorneys representing her at trial. As Kallman points out, she had the burden of proof at trial and called all but two of the witnesses who testified. It did not and does not appear to the Court that there was any unreasonable or undue duplication of effort between Mr. Mishkin and Ms. Duvall.

Defendants have made a number of other objections which are without merit and do not warrant extended discussion. *See* Dfdt. Reply at 7-10. In a nutshell, there is no basis to make deductions for taking a video deposition of Thomas Peters – which was taken after it turned out Peters would be unavailable to testify at trial, and which was admitted in evidence; preparing an amended report of Gene Noska, an expert for the plaintiff; traveling for the deposition of Irwin Kallman; conducting on-line legal research; allegedly excessive photocopying and overnight mail charges; or any of the specific line-items challenged by defendants. These entries all have been shown to be reasonable for a case of this type in view of what was at issue in the case and in light of the overall stakes.

The Court agrees with defendants, however, that Kallman should not recover the time spent preparing either her pre-trial brief or her post-trial brief. Neither were requested by the

5

Court. Indeed, the instructions for preparing a pre-trial order set forth on this Court's web page at the time, www.ilnd.uscourts.gov/jdgpages/MFKFPO.htm, stated that "[t]rial briefs are not necessary for either bench or jury trials. Any party that wishes to file a trial brief must seek leave of Court to do so." Though the Court chose to accept Kallman's pre-trial brief, it did so largely out of respect for counsel who had prepared the brief, not any desire or need to have one. The same was true of the post-trial brief, which the Court did not request. The Court will therefore deduct $15,364.75 from Kallman's fee request ($9,638 for the pre-trial brief and $5,726.75 for the post-trial brief).

## Conclusion

For the foregoing reasons, the Court grants plaintiff's motion for an award of attorney's fees and non-taxable expenses [Docket Item 138-1, 138-2]. The Court awards plaintiff attorney's fees of $142,383.70 and expenses of $21,085.63, for a total of $163,469.33.

MATTHEW F. KENNELLY
United States District Judge

Date: June 11, 2001

6